UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

MERETTE GENESTE,                                    DECISION AND ORDER
                                                    12-CV-5801 (WFK)
                    Plaintiff,

        -*against*-

AGMA, INC d/b/a SANDS POINT CENTER;
JOHN CHOWSKY; ANN PETERSON; AND
JENNY COLLARZO,

                    Defendants.

--------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

Plaintiff, *pro se*, brings this action alleging that Defendants discriminated and retaliated against her based on her age, race, and national origin. Plaintiff claims that she was denied a modified schedule to attend school and was subsequently "singled out" by Defendants for termination. Defendants contend that Plaintiff was terminated for working unauthorized shifts and failing to document patient care. Plaintiff alleges violations of Title VII, the Age Discrimination in Employment Act (ADEA), 42 U.S.C. § 1981, and the New York State Human Rights Law (NYSHRL). Defendants now move for summary judgment. While a number of Plaintiff's claims must be dismissed for procedural violations, ultimately, Plaintiff has failed to provide any factual allegation demonstrating that age, race, or national origin played a role in Defendants' decisions regarding her employment. For these reasons, Defendants' motion for summary judgment is granted in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Parties*

    *Pro se* Plaintiff Merette Geneste is black, of Haitian origin, and 54 years old. Defendant

AGMA, Inc. d/b/a Sand Point Center ("Sand Point") is a residential skilled nursing and

rehabilitation facility that provides a range of services in Port Washington, New York. Plaintiff

was employed as a full-time Certified Nursing Assistant ("CNA") at Sand Point from

—1—

approximately July 16, 2001 to June 3, 2011. During the relevant time period, Defendant John Chowske was the Administrator at Sand Point, Defendant Antoinette Peterson was the Director of Nursing, and Jeanette Collzao-Torres was the Weekend Nursing Supervisor.

**B. *Events Surrounding Plaintiff's Termination***

This action centers on a series of events that took place between April and June of 2011 at Sand Point. The problems began on April 5, 2011 when Plaintiff requested, but did not receive, approval to change her schedule so that she could pursue Licensed Practical Nursing (LPN) schooling. *See* Dkts. 66-20, 60-21, 60-22 (Ex. J, Deposition of Plaintiff ("Pl.'s Dep.")) at 152–53. Defendants aver that Plaintiff's request was denied because of prior schedule change requests from at least five other CNAs. *See* Dkt. 66-2 (Defs.' R. 56.1 St. ("Defs.' St.")), at ¶¶ 23, 25. On May 10, 2011, Plaintiff requested a schedule change for a second time, which was again denied because of Sand Point's pre-existing scheduling obligations. *Id.* at ¶ 27. During the same time period, another CNA, non-party Bernadette Paul, also requested a scheduling change to pursue LPN schooling. Defendant Peterson explained to Plaintiff that Paul's request had to be considered first, under the collective bargaining agreement, because of Paul's seniority over Plaintiff. *Id.* ¶ 29. Paul is also black and Haitian. *Id.* ¶ 94.

Plaintiff admitted at her deposition that she was never given written approval for a modified schedule in May 2011. *See* Pl.'s Dep. At 148–53. However, once LPN classes started, Plaintiff failed to appear for two of her scheduled shifts (referred to as a "no call/no show" ("NCNS")). *Id.* ¶¶ 31–35. Plaintiff argued that she had informed Defendant Peterson of her new class schedule, but at a subsequent meeting, Defendants again explained to Plaintiff that her request for a schedule change could not be accommodated due to Sand Point's staffing needs at that time. *See id.* ¶¶ 38–39. Plaintiff was given a retroactive three-day suspension for her NCNSs

and was warned that continued infractions could lead to termination. *Id.* ¶ 38.[1]  Plaintiff agreed

that she would adhere to her normal schedule, *id.* at ¶ 39–40, but refused to sign the Disciplinary

Notice regarding her NCNS infractions, *id.* at ¶ 42.    Thereafter, Defendant Chowske sent

Plaintiff's union a letter the following day re-stating that Sand Point could not accommodate

Plaintiff's request for a modified work schedule because it would impair the ability of the facility

to run properly. *Id.* ¶ 43.  The letter reiterated that Plaintiff was not being granted a schedule

change and warned Plaintiff that any schedule change needed to be approved in writing. *Id.*

On Saturday, May 28, 2011, Plaintiff was scheduled to work the 3-11 pm shift

(hereinafter the "evening shift"). *Id.* ¶ 45.  However, Plaintiff arrived at Sand Point at 7:00 a.m.

and claimed that she was scheduled to work the 7:00 am – 3:00 pm shift (hereinafter the "day

shift") as part of an alleged arrangement where she would now work double shifts on weekends.

*Id.* ¶¶ 46, 48.  It is undisputed that Plaintiff did not have prior permission or approval to work

this unscheduled day shift. *Id.* at ¶ 46; Dkt. 67 (Pl.'s Br. in Opp. ("Pl.'s Br.")) at 12.[2]  Plaintiff

avoided Defendant Peterson, her ultimate supervisor, and instead found the on-duty supervisor,

Defendant Collazo, who Plaintiff falsely informed that she would now be working double shifts

on weekends. Defs.' St. ¶ 48.[3]  Collazo noted that Plaintiff was not scheduled to work the day

---

[1] Bernadette Paul, the other CNA seeking a schedule change, was also a NCNS for shifts during
the first week of LPN school.   She received the same discipline for the same infraction as
Plaintiff. Defs.' St. ¶ 41.  However, Paul's schedule change was eventually approved.

[2] Plaintiff argues that Defendant Collazo gave her permission to work these shifts, but does not
dispute that her initial request to have her schedule adjusted had been denied by Peterson, the
proper supervisor to grant or deny a requested schedule change. *See* Pl.'s Br. at 14, 19.

[3] Plaintiff denies this statement and alleges that she did not misrepresent any information to
Collazo. *See* Pl.'s Br. at 14.  However, Plaintiff then states that Collazo "approved" the double
shift. *Id.*  For Collazo to "approve the double shift," she would had to have been represented to

shift, but nonetheless attempted to accommodate her by seeing if any units needed additional help. Defs.' St. ¶ 50. Collazo was informed that all units were staffed and that there was no need for Plaintiff to work the day shift. *See id.* ¶ 51. The parties dispute what happened next.

Defendants contend that Collazo informed Plaintiff to go home and return for the evening shift. *Id.* ¶ 52. Plaintiff disputes this[4] and alleges that Collazo authorized her to work the day shift. Pl.'s Br. at 14, 19. Despite this seemingly critical difference of opinion, two further undisputed facts allow this Court to reach a decision on the summary judgment motion. *First*, Plaintiff does not dispute that only Defendant Peterson could have authorized Plaintiff to work the day shift, and that Plaintiff never received such authorization from Peterson. *See* Pl.'s Dep. at 148–53. Accordingly, Plaintiff worked the day shift by circumventing the proper channels for

---

that Plaintiff, unscheduled for the day shift, had a basis for showing up to work. Furthermore, whatever the circumstances, Plaintiff had been told that any schedule changes needed to be approved in writing and that only Peterson could approve schedule changes.

[4] Local Civil Rule 56.1(b) of the United States District Court for the Southern and Eastern Districts of New York requires the submission of a counterstatement of disputed facts by the non-movant in response to the movant's Local Rule 56.1 statement of undisputed facts. Failure to comply with this rule allows the Court to deem all of Defendants' statements that were not "specifically controverted by a correspondingly numbered paragraph" as admitted. *See* Local Rule 56.1(c). Plaintiff in this action has failed to file such a counterstatement with the Court. Plaintiff is admonished that "[j]udges are not like pigs, hunting for truffles buried in the record." *Gonzalez v. K-Mart Corp.*, 585 F. Supp. 2d 501, 503 (S.D.N.Y. 2008) (Sweet, J.) (quoting *Albrechtsen v. Bd. of Regents of the Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) (Easterbrook, Cir. J.)). However, a "district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockerfeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009). In this instance, because all of Plaintiff's claims fail without rendering all statements in Defs.' R. 56.1 deemed admitted, the Court declines to invoke the severe remedy available for violation of the local rule. *Cf. Rozenfeld v. Dep't of Design & Const. of City of New York*, 875 F. Supp. 2d 189, 196 (E.D.N.Y. 2012) (Kuntz, J.) *aff'd*, 522 F. App'x 46 (2d Cir. 2013) (deeming defendants' R. 56.1 Statement admitted when plaintiff failed to provide a sufficient counterstatement).

obtaining a shift change and deceiving a supervisor about her schedule. *Second*, Plaintiff also does not dispute that she failed to document any of the patient care she performed during the day shift on May 28.[5]  Pl.'s Br. at 15; Defs.' St. ¶¶ 55–65.  Plaintiff was formally fired for defiant insubordination, deceit, and failure to document resident care on June 3, 2011. Defs.' St. ¶ 69.

### C.  *Evidence of Discrimination in the Record*

The record in the action is devoid of examples of racial, age, or national discrimination against Plaintiff.   In fact, Plaintiff conceded multiple times during her deposition that she was "singled out" by Defendants regardless of her race, national origin, age, or because of prior complaints. Pl.'s Dep. at 214–27.  Plaintiff testified that she would have been denied the schedule change and terminated even if she was white, of Italian origin, and younger, *see id.* at 217–18, and admitted that other black, Haitian, or over 45 year old employees would *not* have been subject to the same treatment, *see id.*[6]

Plaintiff also stated the reason she was fired was that she was going to school, not because of her race, age, or national origin. *See id.* at 226.  Plaintiff identified eighteen (18) other Sand Point CNAs who were given modified work schedules to pursue further education. Of the eighteen, Plaintiff identified sixteen (16) who were black and nine (9) who were Haitian.

---

[5] Plaintiff cites the fact that Sand Point paid her for her work during the day shift as evidence of *post-hoc* approval for her to work that shift.  However, Defendants aver that Plaintiff was paid because the Fair Labor Standards Act and New York Labor Law require them to pay an employee for the hours she worked, regardless of whether she was authorized.  *See* Dkt. 69 (Defs.' Reply Br. ("Reply Br.")) at 5 n.2.

[6] For an illustrative example:
"**Q:**  So you testified earlier that your school schedule was denied and nobody else's was?
**A:** Nobody else.
**Q:** Yours would have been denied matter what race you were, Haitian, not Haitian, young, old?
**A:** That's the way they treat me." Pl.'s Dep. at 225.

Dkt. 66 (Ex. I-2, Typed Answers to Interrogatories ("Ex. I-2")) at 2–3; Dkt. 66 (Ex. I-3, Transcript of Discovery and Status Conf. ("Trans.")) at 8–17; *see also* Pl.'s Dep. at 52–91; 100–01; 214–17. However, Defendants contend, and Plaintiff does not challenge, that all of these individuals were enrolled in school and had their schedules adjusted prior to Plaintiff's request for a modified schedule. *See* Dkt. 66 (Ex. MM, Approved Requests from Sand Point CNAs ("Ex. MM")).

Plaintiff also contends that white CNAs were paid more than black CNAs at Sand Point. However, she has not offered any evidence nor identified a single individual by name that was paid more than her because of their race. Defs.' St. ¶¶ 89–90.

### D. Procedural History

After being terminated, Plaintiff filed an administrative complaint with the New York State Division of Human Rights (NYSDHR) on June 17, 2011. Dkt. 66 (Ex. C, NYSDHR Compl.). Plaintiff alleged that, on account of her Haitian national origin, she was discriminatorily denied a requested schedule change and subsequently terminated. *Id.* at 5. Furthermore, she wrote in (but did not check the box) that she was retaliated against because she "help[s] union workers because I'm a delegate (union) 1199." *Id.* After investigating Plaintiff's claim, the NYSDHR found that there was "no probable cause to believe that the respondent had engaged in or is engaging in the unlawful discriminatory practice complained of." Dkt. 66 (Ex. D, NYSDHR Determination and Order After Investigation ("NYSDHR Det.")) at 1. The Investigator noted that "at least 75% of [Sand Point's] staff is of Haitian origin" and that several employees of Haitian origin had their schedules adjusted to accommodate their work schedules. *Id.* at 1–2. The Investigator concluded that Sand Point made a "legitimate, non-discriminatory decision of business necessity, in its decision to terminate [Plaintiff]." *Id.* at 2.

—6—

In a Right-to-Sue letter issued on August 16, 2012, the federal Equal Employment Opportunity Commission adopted the NYSDHR findings. Dkt. 66 (Ex. E, EEOC Right-to-Sue Letter ("EEOC Letter") at 1. Plaintiff testified that she received the EEOC Letter on August 22, 2012. Compl. at 5, ¶ 12; Pl.'s Dep. at 32–37. Plaintiff had 90 days to bring her federal district court lawsuit, or until November 20, 2012. Plaintiff, however, did not initiate this action until November 26, 2012. Compl. at 5.

At a pre-motion conference on February 12, 2014, this Court granted Defendants' request to move for summary judgment. *See* Dkt. Entry of 2/13/2014. The briefing on that motion concluded on September 10, 2014. *See* Dkt. 69. On October 27, 2014, the Court heard oral argument on the motion.

## ANALYSIS

### A. *Summary Judgment Standard*

A court appropriately grants summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The moving party must meet its burden by pointing to evidence in the record, including depositions, documents, affidavits, or other materials which it believes demonstrates the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In determining whether summary judgment is appropriate, [the] Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."

*Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks and citations omitted). The role of the district court is not to weigh the evidence and determine the truth of the matter, but rather to perform "the threshold inquiry of whether there is the need for a trial[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

If the moving party fulfills its preliminary burden, the burden shifts to the non-movant to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1). The non-moving party must make a showing sufficient to establish the existence of each element constituting its case. *See Celotex*, 477 U.S. at 322–23 ("[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."). Statements that are devoid of specifics and evidence that is "merely colorable" are insufficient to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citing *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).

**B.  *Title VII Claims***

**1.  <u>Plaintiff's Title VII Claims Are Time-Barred</u>**

Defendants argue that all of Plaintiff's Title VII claims are time-barred because Plaintiff did not file her federal court complaint within 90 days of her receipt of the EEOC Right-to-Sue Letter. Plaintiff responds that a right-to-sue letter is not required before filing a Title VII claim. *See* Pl. Br. at 3. For the reasons below, the Court agrees with Defendants and holds that Plaintiff's Title VII claims are time-barred.

A Title VII claim must be filed by a plaintiff within 90 days of receipt of a Right-to-Sue letter from the EEOC, or else the complaint is untimely. *Francis v. Elmsford Sch. Dist.*, 442 F.3d 123, 126 (2d Cir. 2006); *Gallop-Laverpool v. 1199 SEIU United Healthcare Workers E.*, 14-CV-2879, 2014 WL 3897588 (E.D.N.Y. Aug. 8, 2014) (Gleeson, J.); *see also* 42 U.S.C. § 2000e–5(f)(1) (specifying that a Title VII action must be brought within 90 days of the claimant's notification of her right to sue). There is a "presumption that a mailed document is received three days after its mailing[,]" but this presumption can be overcome if a claimant provides sworn testimony that it was received later. *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011). "While the ninety-day filing requirement is not jurisdictional, courts apply this requirement strictly and waive it only if equitable considerations justify an extension." *Ford v. Consol. Edison Co. of New York*, 03-CV-9587, 2006 WL 538116, at *6 (S.D.N.Y. Mar. 3, 2006) (Crotty, J.) *aff'd*, 225 F. App'x 19 (2d Cir. 2007) (citing *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984)). Courts strictly enforce the 90-day Title VII deadline even where the plaintiff is proceeding *pro se*. *See Manley v. New York City Police Dep't*, CV-05-679, 2005 WL 2664220, at *3 (E.D.N.Y. Oct. 19, 2005) (Block, J.) (collecting cases).

Here, the timing of the events is not in dispute. The EEOC Letter was sent to Plaintiff on August 16, 2012. Defs.' St. ¶ 12. Overcoming the three-day presumption, Plaintiff stated in her Complaint and testified at her deposition that she did not receive the letter until August 22, 2012. Compl. ¶ 12; Pl. Dep. at 32–37. Accordingly, Plaintiff needed to file her Complaint by November 20, 2012 for it to be timely. However, Plaintiff did not file her federal complaint until November 26, 2012. *See* Dkt. 1; Compl. at 5. Further, Plaintiff provided no equitable considerations justifying a tolling of her deadline. *See, e.g., Manley*, 2005 WL 2664220, at *3

(finding that losing track of time and calculating the time in business days, instead of calendar days, did not warrant equitable tolling).  Accordingly, Plaintiff's Title VII claims were brought six days late and must be dismissed as untimely.

However, as discussed below, even if the Court were to equitably toll the deadline for Plaintiff's otherwise delinquent filing, her Title VII claims lack substantive merit.

## 2. Plaintiff's Retaliation Claim is Not Administratively Preserved

Defendants also contend that Plaintiff's Title VII retaliation claim was not raised in her NYSDHR complaint and, therefore, this Court lacks jurisdiction to consider that claim because it is administratively unpreserved.  For the reasons below, the Court agrees with Defendants and holds that Plaintiff's Title VII retaliation claim is not administratively preserved.

"A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993) (internal citations omitted), *superseded by statute on other grounds*, Civ. Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071.  "The 'sufficiently related' theory applies in three situations: (1) where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) 'where the claim alleges an employer's retaliation for filing an EEOC charge; and (3) where a plaintiff alleges further incidents of discrimination carried out in the same manner alleged in precisely the EEOC charge.'" *Carter v. New Venture Gear, Inc.*, 310 F. App'x 454, 458 (2d Cir. 2009) (citing *Butts*, 990 F.2d at 1402–03).

Plaintiff's NYSDHR complaint did not include the same retaliation claims that she now makes before this Court.  In her NYSDHR complaint, Plaintiff wrote next to the box for retaliation:

—10—

"HELP UNION WORKERS because I'm a Delegate (UNION) 1199." NYSDHR Compl. at 5. However, in her federal court complaint, Plaintiff alleges an entirely different form of retaliation. Plaintiff now alleges that she was retaliated against for alleged complaints regarding (1) her lack of a promotion through LPN training, (2) black CNAs being denied similar opportunities given to white CNAs, (3) her opposition to the alleged discriminatory practices based on employees' race and Haitian origin, and (4) Defendants' denial of her desired schedule change. Compl. at 3, 6–7. Because the NYSDHR complaint does not contain a single reference to any of these alleged bases for retaliation, the Court cannot reasonably find that Plaintiff asserted these Title VII retaliation claims before the state agency. *See Cordoba v. Beau Dietl & Associates*, 02-CV-4951, 2003 WL 22902266, at *10 (S.D.N.Y. Dec. 8, 2003) (Mukasey, J.) (plaintiff did not assert retaliation claims in EEOC complaint when she merely wrote that defendant "committed unlawful discriminatory practices and retaliation against me based on my age and national origin" but did not indicate that she complained about such discriminatory practices).

Furthermore, Plaintiff's administrative complaint, which was premised on union retaliation, is not sufficiently related to her subsequent retaliation claims before this Court. The Court finds that Plaintiff's claims do not qualify as "sufficiently related" under any of the three *Butts* situations. *First*, a retaliation complaint based on Plaintiff's union status cannot reasonably be expected to result in an investigation concerning retaliation based on purported complaints about promotions, scheduling, and the disparate treatment of black and Haitian workers. *See Foxworth v. Am. Bible Soc.*, 03-CV-3005, 2005 WL 1837504, at *10–11 (S.D.N.Y. July 28, 2005) (Mukasey, J.) *aff'd sub nom.*, 180 F. App'x 294 (2d Cir. 2006) ("A claim not included in an EEOC charge will not be deemed 'reasonably related' where the claim is based on 'a wholly different type of discrimination' from that alleged in the EEOC complaint, or '[w]here the facts

—11—

in the original EEOC charge do not sufficiently apprise the EEOC that another type of discrimination claim lurks in the background.'") (internal citations omitted); *Chinn v. City University of New York School of Law,* 963 F. Supp. 218, 223–24 (E.D.N.Y. 1997) (Dearie, J.) ("The 'reasonable relatedness' test is not satisfied by the improbable possibility that the EEOC could have stumbled into a new universe of allegations that the plaintiff alleges for the first time in [her] complaint."). Plaintiff's narrative in her NYSDHR complaint was bereft of any indication by which the state entity could have inferred that Plaintiff was asserting claims for retaliation based on her engagement in a protected activity[7] regarding promotions, scheduling, or the disparate treatment. *Second,* Plaintiff was terminated weeks before she filed her NYSDHR complaint and, therefore, she cannot argue that she was retaliated against for filing that complaint. *Third,* Plaintiff is not—and cannot be, based on the timing of events in this case— alleging that she faced subsequent instances of retaliation after the NYSDHR completed its investigation. *Cf. Butts,* 990 F.2d at 1403 (noting that the third "reasonably related" situation would apply when additional discrimination occurs *after* the EEOC completes its investigation).

Allowing Plaintiff to raise these Title VII retaliation claims for the first time before this Court "would undermine the administrative remedial process mandated by Title VII and deprive [D]efendants of notice of the charges." *Chinn,* 963 F. Supp. at 224. As Plaintiff's NYSDHR complaint failed to raise her current retaliation claims or contain sufficiently related claims of

[7] Plaintiff's federal complaint does not allege union membership as the basis of her retaliation. Nonetheless, mere union membership has not been recognized as protected activity under Title VII case law. *See, e.g., Clemente v. New York State Div. of Parole,* 684 F. Supp. 2d 366, 373 (S.D.N.Y. 2010) (Holwell, J.) ("retaliation based on . . . union membership[] will not support a claim under Title VII."); *see also St. Jean v. United Parcel Serv. Gen. Serv. Co.,* 09-CV-3782, 2012 WL 71843, at *8 n.3 (E.D.N.Y. Jan. 10, 2012) (Irizarry, J.) *aff'd,* 509 F. App'x 90 (2d Cir. 2013).

—12—

retaliation, Plaintiff's Title VII retaliation claims must be dismissed as administratively unexhausted.[8]

### 3.  **Plaintiff Has Failed to State a *Prima Facie* Case for Title VII Discrimination**

#### a. Title VII Standard

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual ... because of such individual's race [or] color[.]" 42 U.S.C. § 2000e–2(a)(1).  In the seminal case *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), the Supreme Court set forth a three-step burden-shifting analysis for courts to apply when analyzing claims of discrimination under Title VII.  Initially, a plaintiff must establish a *prima facie* case of discrimination, *see id.* at 802, by demonstrating: (1) "membership in a protected class;" (2) "qualification for the position;" (3) "adverse employment action;" and (4) "circumstances giving rise to an inference of discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000).  "Although the burden of establishing a prima facie case is not onerous, and has been frequently described as minimal, the Second Circuit has also noted that a jury cannot infer discrimination from thin air." *Stafford v. N.Y. Presbyterian Hosp.*, 06-CV-2150, 2011 WL 1131104, at \*5 (E.D.N.Y. Mar. 28, 2011) (Vitaliano, J.) (internal citations omitted).

If a plaintiff establishes a *prima facie* case of discrimination, the burden "then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802; *accord Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  "This burden is one of production, not persuasion; it can involve no credibility

---

[8] Plaintiff's Title VII retaliation claim must be dismissed without prejudice as she cannot now file an administrative claim with the NYSDHR or EEOC because it has been more than 300 days since the latest possible alleged retaliatory act. *See Flaherty v. Metromail Corp.*, 235 F.3d 133, 136 n.1 (2d Cir. 2000).

—13—

assessment." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000) (internal citations omitted).  Once the employer satisfies this burden, "the presumption of discrimination drops out of the picture," and the plaintiff bears the burden of demonstrating "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 143 (internal quotations and citations omitted).

### b. Plaintiff has failed to state a *prima facie* case of discrimination

While Plaintiff can satisfy the first three elements required to state *prima facie* case of discrimination,[9] Plaintiff has proffered only conclusory evidence and subjective claims to support her allegation that the circumstances surrounding her termination demonstrate an inference of discriminatory animus.

"[I]n presenting a *prima facie* case of discriminatory discharge [P]laintiff must present proof that her discharge occurred in circumstances giving rise to an inference of discrimination on the basis of her membership in [a protected] class." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996).  The only relevant inquiry is whether Plaintiff has come forward with enough evidence "from which a rational fact finder could infer unlawful discriminatory animus on the part of [Defendants]." *Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 96 (2d Cir. 1994); *see also Randolph v. CIBC World Markets*, 01-CV-11589, 2005 WL 704804, at *12 (S.D.N.Y. Mar. 29, 2005) (Sweet, J.).  When a plaintiff fails to present "evidence to establish any such causal link between [her] termination and his race" summary judgment is appropriate. *Randolph*, 2005 WL 704804, at *12.

---

[9] The Court views, in the light most favorable to the non-moving Plaintiff, the denial of a schedule change that led to her termination as an adverse employment action solely for purposes of this Order.

Defendants contend that Plaintiff has presented no such proof. They argue that "no defendant ever made any statements expressing bias or hostility toward plaintiff based on her race or national origin." Defs.' Br. at 11. Further, they argue, the record is devoid of any indication that Plaintiff's dismissal was tied to discriminatory animus on the part of Defendants. *Id.* This point is strengthened by Plaintiff's own deposition testimony, in which Plaintiff reiterated time and again that Defendants refused to modify her schedule and ultimately terminated her for reasons other than her race, national origin, or age. *See* Pl.'s Dep. at 214–27. This testimony is coupled with the undisputed fact that Sand Point granted eighteen other CNAs' schedule change requests, sixteen for black CNAs and nine for Haitian CNAs. Ex. I-2 at 2; Trans. at 8–17; Pl.'s Dep. at 52–91, 100–01, 214–17. Defendants also argue that the circumstances surrounding the denial of Plaintiff's request for a schedule change and termination were exclusively related to Sand Point's staffing needs, its inability to have another CNA working an irregular schedule, and Plaintiff's choice to disobey directives and operate on her own unilateral work schedule. Defs. Br. at 11, 15. Defendants reiterate that Plaintiff was only terminated after she either worked an unauthorized shift or, at best, improperly deceived the shift supervisor into allowing her to work and then provided undocumented patient care. Reply Br. at 5. Defendants argue that even under Plaintiff's recounting of the facts, there is no discriminatory element to Defendants' employment decision. *Id.* at 5–6.

After a thorough review of the record, this Court agrees with Defendant. The Court finds that the undisputed facts, including Plaintiff's admissions, preclude Plaintiff from stating a *prima facie* case that discriminatory animus played any role in Defendants' decision to deny her schedule modifications and ultimately terminate her.

Plaintiff's only response has been to assert an unsupported argument as evidence of discriminatory animus. Plaintiff conclusorily alleges that white employees were paid more than black employees. Not only has Plaintiff provided no evidence of this claim, but it is unclear how Plaintiff intends to correlate this allegation with her termination.

In sum, the entirety of the evidence points to Plaintiff being denied a schedule change and ultimately terminated because of Defendants' legitimate business considerations and Plaintiff's improper conduct. Absent any indication that the circumstances surrounding Plaintiff's termination involved discriminatory animus, Plaintiff cannot state a *prima facie* case for Title VII discrimination, thereby precluding her ability to pursue this claim.

### c. Defendants Had Legitimate, Non-Discriminatory, and Non-Pretextual Reasons for Denying Plaintiff's Schedule Change Request and Ultimately Terminating Her

Assuming, *arguendo*, that Plaintiff's Title VII claim was timely and that she stated a *prima facie* case for discrimination, her claim would still fail because Defendants have articulated a legitimate, non-discriminatory reason for denying her schedule modification and terminating her. And Plaintiff has provided no evidence that this reason was pretextual.

*First*, regarding Plaintiff's schedule modification request, Defendants have articulated, as recounted above, that the request was denied because Sand Point could not operate at that time with an additional CNA switching to an irregular schedule. At least five similar requests had already been granted for that school year and Plaintiff's request came too late. *See* Defs.' St. ¶ 23. This is undisputedly a legitimate business reason for denying Plaintiff's request.

*Second*, even under Plaintiff's version of events, when Plaintiff showed up for and worked the day shift on May 28,[10] she undisputedly subverted Defendant Peterson's directive that Plaintiff's schedule would not be changed and any modifications would have to be in writing. *See* Pl.'s Br. at 12, 14, 19.   Plaintiff does not dispute that only Peterson could have changed her schedule and that it had to be in writing.   Furthermore, and more alarming to this Court, Plaintiff does not dispute that she did not document any of the patient care that she performed during the day shift.   Both subverting her assigned schedule and failing to document patient care provided Defendants with a legitimate and non-discriminatory basis on which to discharge Plaintiff. *See Hecht v. Nextel of New York*, 10-CV-8740, 2012 WL 2421874, at *6 (S.D.N.Y. June 27, 2012) (Engelmayer, J.) (finding violation of company policy provides legitimate and nondiscriminatory reason for adverse employment action); *see also Dinkins v. Suffolk Transp. Svc., Inc.*, 07-CV-3567, 2010 WL 2816624, at *8 (E.D.N.Y. July 15, 2010) (Bianco, J.) (collecting cases in which history of disciplinary problems and violations of company policy provided legitimate and nondiscriminatory reason for adverse employment action).

Finally, there is simply nothing in the record to indicate that the reasons Defendants provided were a pretext to hide a discriminatory motive for terminating Plaintiff.   Plaintiff has failed to meet her burden to overcome Defendants' legitimate reasons for the adverse employment action.   Accordingly, even if the Court were to ignore the delinquency in Plaintiff's filing and her inability to state a *prima facie* case of Title VII discrimination, Defendants would nonetheless be entitled to summary judgment based on the undisputed facts regarding the

---

[10] Plaintiff makes much of the fact that she was paid for working the day shift on May 28. However, as Defendants explain, they were required by New York and federal law to compensate Plaintiff because she actually worked the shift. *See* n.5 *supra*.

legitimate reasons they offered for denying Plaintiff a modified schedule and subsequently terminating her.

### C. *Plaintiff's ADEA Claim*

#### 1. <u>Plaintiff's ADEA Claim is Not Administratively Exhausted</u>

Defendants contend that Plaintiff's ADEA claim should be dismissed for failure to administratively exhaust. They argue that because Plaintiff did not allege age discrimination in her complaint with the NYSDHR, she failed to exhaust that claim and is therefore precluded from alleging age discrimination in her federal court action. Defendants' argument is correct and warrants dismissal of Plaintiff's ADEA claim.

The ADEA, like Title VII, requires that a plaintiff alert the EEOC or the correlative state agency, in this case the NYSDHR, of an age discrimination claim within 300 days of last discriminatory act. 29 U.S.C. § 626(d). Accordingly, the plaintiff must raise the allegations that form the basis of the federal complaint in the EEOC or state agency action. *Miller v. Int'l Tel. & Tel. Corp.,* 755 F.2d 20, 23 (2d Cir. 1985) ("No action based on a claim of age discrimination may be brought in federal court unless the claim was properly raised with the EEOC[.]"); *see also Owens v. Elmhurst Hosp. Ctr.*, 24 F. App'x 82, 83 (2d Cir. 2001). Failure to either raise the claim, or a "reasonably related" claim, *see Butts*, 990 F.2d at 1401, will result in dismissal of the unexhausted claim, *see Holtz v. Rockefeller & Co.,* 258 F.3d 62, 82–83 (2d Cir. 2001).

Here, it is without question that Plaintiff's age discrimination claim was not explicitly raised in the NYSDHR complaint. *See* NYSDHR Compl. at 5. Furthermore, there was nothing in Plaintiff's narrative to the state agency that would raise any of the three "reasonably related" exceptions, discussed above in Section B.2 *supra*. Specifically, the conduct complained of—discrimination based on national origin and retaliation based on union membership—would not

lead the NYSDHR to investigate potential age discrimination. *See Butts*, 990 F.2d at 1401. The two other potential scenarios described in *Butts* could not apply because Plaintiff was fired before filing her NYSDHR complaint. *Id.* Ultimately, Plaintiff's failure to raise an age discrimination allegation before the NYSDHR precludes her from bringing that claim now in federal court.

### 2. Plaintiff Fails to State an ADEA Claim

Defendants alternatively argue that "[P]laintiff has proffered absolutely no evidence from which a jury might reasonably infer unlawful discrimination based on age." Defs.' Br. at 28. Again, Defendants are correct and therefore, under the *McDonnell Douglas* framework, Plaintiff's disparate treatment claim under the ADEA cannot prevail.

ADEA claims are analyzed under the same *McDonnell Douglas* burden-shifting analysis used in Title VII cases. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105–06 (2d Cir. 2010). And while the Supreme Court eliminated mixed motive claims under the ADEA, *see Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 174–78 (2009), the Second Circuit continues to apply the traditional framework with the additional requirement that a plaintiff prove "that age was the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor" in order to state a claim, *Gorzynski*, 596 F.3d at 106 (internal citations omitted). Accordingly, Plaintiff must establish a *prima facie* case of age discrimination against Defendants. This requires Plaintiff to show "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Id.* at 107.

Again, as with her Title VII claims, Plaintiff has failed to meet even the modest evidentiary burden required to state a *prima facie* case of age discrimination. Plaintiff offers nothing more than her own subjective belief that her age played a factor in her termination.

—19—

When a plaintiff cannot "recall any action or statement by [the defendant] that showed age discrimination" there is no reasonable basis for finding an inference of discrimination. *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir. 1997); *see also Hirschberg v. Bank of Am., N.A.*, 754 F. Supp. 2d 500, 520 (E.D.N.Y. 2010) (Hurley, J.). "Because the only evidence supporting [Plaintiff's] *prima facie* case is [her] own subjective belief that [s]he was discriminated against, summary judgment is appropriate." *Holowecki v. Fed. Exp. Corp.*, 644 F. Supp. 2d 338, 353 (S.D.N.Y. 2009) (Rakoff, J.) *aff'd*, 382 F. App'x 42 (2d Cir. 2010) (finding no basis for a prima facie case of discrimination when plaintiff provided no indication that management ever took an action based upon plaintiff's age nor made a statement regarding plaintiff's age). Plaintiff has offered nothing more than her own cursory allegations—allegations that she contradicted during her deposition—that age was a factor in her dismissal. This is insufficient to overcome Plaintiff's initial burden under the ADEA to state a *prima facie* case. *See, e.g., Brown v. Dep't of Educ. of City of New York*, 10-CV-5023, 2012 WL 1319859 (S.D.N.Y. Apr. 11, 2012) (Stein, J.) *aff'd sub nom.*, 513 F. App'x 89 (2d Cir. 2013) (finding no genuine dispute as to any material fact when plaintiff's discrimination claims rested entirely on plaintiff's own speculation and surmise).

Furthermore, even if Plaintiff had stated a *prima facie* case, her ADEA claim would still fail because of the legitimate, nondiscriminatory reasons offered for the denial of her schedule change request and subsequent termination. *See* Sec. II.B.3.c *supra*. After such a reason is set forth, "the plaintiff can no longer rely on the *prima facie* case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination." *Gorzynski*, 596 F.3d at 106. Yet, Plaintiff has provided no evidence, not even *prima facie* evidence, that age discrimination played any role in her termination from Sand Point. Particularly in light of the

—20—

requirement that Plaintiff must show that age discrimination was the "but-for" cause of her termination, Plaintiff's ADEA claim cannot survive summary judgment under this record.

### D. *Plaintiff's 42 U.S.C. § 1981 Claims*

Plaintiff alleges that Defendants' acts "including the decision to terminate Plaintiff" violated § 1981 "because it intentionally retaliated against because Plaintiff opposed racially discriminatory practices and filed a complaint against Defendants' racially discriminatory practices and based on Haitian origin [sic]." Compl. at 7. Defendants argue that Plaintiff's § 1981 claim cannot proceed under either an intentional discrimination or retaliation theory, and that national origin claims cannot be brought under § 1981. Defs.' Br. at 32.

Section 1981 states that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Claims under this statute only apply to racial discrimination, *see Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (holding that allegations of discrimination based on national origin do not create a § 1981 cause of action), can be brought under a retaliation theory, *see CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008), and are analyzed under the same *McDonnell Douglas* framework as Title VII claims, *see Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) ("Retaliation claims made under 42 U.S.C. § 1981, like those made under Title VII, are evaluated using a three-step burden-shifting analysis.").

—21—

Accordingly, Plaintiff's § 1981 claim must be dismissed on three separate bases. *First*, Plaintiff cannot bring a claim for national origin discrimination under the statute. *See Al-Khazraji*, 481 U.S. at 613. *Second*, Plaintiff's retaliation claim fails because there is no evidence in the record that Plaintiff ever complained that she was discriminated against on account of her race at any time during her employment at Sand Point. *See* Defs.' St. ¶ 97; Pl.'s Dep. 127–28, 214–17; *see also Little v. Ne. Utilities Serv. Co.*, 299 F. App'x 50, 52 (2d Cir. 2008) (upholding district court's dismissal of § 1981 retaliation claim when plaintiff never complained of discrimination and otherwise suffered no adverse employment action for any protected activity); *Hernandez v. City of New York*, 11-CV-3521, 2013 WL 593450, at *6 (E.D.N.Y. Feb. 13, 2013) (Johnson, J.) ("Since the alleged retaliatory action taken against Plaintiff preceded the only conceivable 'protected activity,' the Amended Complaint cannot plausibly satisfy the causal nexus element of a retaliation claim."). *Third*, for the same reasons Plaintiff's Title VII race discrimination failed, *see* Sec. II.B.3.b,c *supra*, her § 1981 race discrimination claim also fails, *see Lu v. Chase Inv. Servs. Corp.*, 07-CV-1256, 2009 WL 4670922, at *6 (E.D.N.Y. Dec. 9, 2009) (Block, J.) *aff'd sub nom.*, 412 F. App'x 413 (2d Cir. 2011) (dismissing § 1981 race discrimination claim because plaintiff could not state a Title VII claim). For these reasons, Defendants are entitled to summary judgment on Plaintiff's § 1981 claims.

### E. *Plaintiff's State Law Claims Must Also Be Dismissed*

Read in the light most favorable to Plaintiff, her complaint can be read to allege violations of the New York State Human Rights Law (NYSHRL), N.Y. Exec. Law § 296(i). *See* Compl. at 10. The analysis for reviewing claims under the NYSHRL is identical to the analysis utilized in reviewing claims under Title VII and the ADEA. *Mittl v. New York State Div. of Human Rights*, 100 N.Y.2d 326, 330 (2003) ("The standards for establishing unlawful

discrimination under section 296 of the Human Rights Law are the same as those governing title VII cases under the Federal Civil Rights Act of 1964."); *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 498 n.1 (2d Cir. 2009), *superseded by regulation on other grounds* ("Age discrimination claims brought pursuant to the NYSHRL ... are analyzed under the ADEA framework, ... just as gender discrimination claims brought pursuant to the NYSHRL ... are analyzed under the Title VII framework."); *see also Sotomayor v. City of New York,* 862 F. Supp. 2d 226, 251 (E.D.N.Y. 2012) (Weinstein, J.) *aff'd,* 713 F.3d 163 (2d Cir. 2013). Accordingly, for the same reasons this Court declines Plaintiff's claims under Title VII, *see* Sec. B *supra,* and the ADEA, *see* Sec. C *supra,* the Court finds that Defendants are entitled to summary judgment on the claims arising under the NYSHRL.

## CONCLUSION

Accordingly, based on the record and law as set forth above, the Court hereby GRANTS Defendants' motion for summary judgment in its entirety. The Complaint shall be dismissed in its entirety. The Court respectfully directs the Clerk of Court to close this case and to provide notice and a copy of this Decision to Plaintiff.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: October 29, 2014
       Brooklyn, New York